UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALFREDO MORAN, SR.,

      Plaintiff,                    CIVIL ACTION NO. 09-12042

      v.                             DISTRICT JUDGE GEORGE CARAM STEEH

COMMISSIONER OF               MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I. PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On May 27, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability, disability insurance benefits and supplemental security income benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 9, 14).

    *B.    Administrative Proceedings*

Plaintiff filed the instant claims on November 16, 2006, alleging that he became unable to work on November 10, 2006 (Tr. 79, 85-87). The claim was initially disapproved by the Commissioner on March 20, 2007 (Tr. 53-61). Plaintiff requested a hearing and, on December

-1-

18, 2008, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Jerome B. Blum, who considered the case *de novo*. In a decision dated March 16, 2009, the ALJ found that Plaintiff was not disabled (Tr. 13-24). Plaintiff requested a review of this decision on March 27, 2009 (Tr. 5-6). The ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1] (AC-1, Tr. 6-12), the Appeals Council, on May 14, 2009, denied Plaintiff's request for review (Tr. 1-4); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II. STATEMENT OF FACTS

### A. *ALJ Findings*

Plaintiff was 53 years old at the time of the most recent administrative hearing (Tr. 34). Plaintiff's relevant work history included work as a dishwasher, teacher's assistant and custodian (Tr. 23). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since November 10, 2006 (Tr. 18). At step two, the ALJ found that Plaintiff had the following "severe" impairments: acquired

---

[1] In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, since it has been held that the record is closed at the administrative law judge level, those "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996). Therefore, since district court review of the administrative record is limited to the ALJ's decision, which is the final decision of the Commissioner, the court can consider only that evidence presented to the ALJ. In other words, Appeals Council evidence may not be considered for the purpose of substantial evidence review.

immune deficiency syndrome (AIDS), herpes simplex virus type 2 (HSV2), degenerative joint disease, and a history of dyslipidemia. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations (Tr. 20).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "a range of light work.... It is determined that [Plaintiff] has the [RFC] to stand and/or walk for six hours in an eight hour workday and sit for six hours in an eight hour workday. [Plaintiff] also has the [RFC] to lift and/or carry ten pounds frequently and twenty pounds occasionally" (Tr. 21). At step four, the ALJ found – relying upon the vocational expert's testimony – that Plaintiff was capable of performing his past work as a dishwasher, and thus was not disabled (Tr. 23). As such, the ALJ's review terminated before reaching step five.

### B. *Administrative Record*

#### 1. **Plaintiff's Testimony and Statements**

Plaintiff testified that he was 53 years old, had a 10th grade education, and had last worked as a dishwasher – a job he had held for three to four years until November 2006 (Tr. 34-35). Plaintiff claimed this job required him to lift no more than two pounds (Tr. 35). Plaintiff said that he stopped working because he became ill; his medication made him "real tired" and sometimes he would get confused (Tr. 35). Plaintiff explained that AIDS made him both tired and forgetful (Tr. 36-37). Plaintiff also testified that he hurt his shoulder and was going to start physical therapy (Tr. 37). He believed he could not work on account of fatigue, forgetfulness, and pain in his fingers (Tr. 43).

In a Function Report dated December 1, 2006, Plaintiff reported that he performed two-and-a-half hours of housework daily, which included making the bed, cleaning the bathroom,

washing dishes, general cleaning of his apartment, vacuuming, and mopping (Tr. 122-24). He disclosed that he prepared all three of his meals daily and he shopped for groceries every other week (Tr. 124-25). He indicated that he attended church twice weekly (Tr. 126). He again reported that he took walks approximately three times weekly (Tr. 126). However, Plaintiff also reported that he needed to rest for five to six minutes after walking for 20 minutes, claimed he could not lift over five pounds, and indicated his shoulders hurt when he did any reaching (Tr. 127). He admitted he would forget to take his medication (Tr. 127).

### 2. Medical Evidence

In 1997, Plaintiff was found to be have been infected with HIV, and he was diagnosed with AIDS in 1998 (Tr. 105, 139). By 2005, Plaintiff's disease was advanced; his CD4 count on January 18, 2005, was 56, and on March 22, 2005, it was 45 (Tr. 199, 375, 378). Throughout 2005 and 2006, Plaintiff received treatment from Dr. Jambunathan Ramanathan and, more frequently, from Michelle Caffey, a nurse practitioner, who together placed him on highly active antiretroviral therapy (Tr. 139, 297-385).

A blood test taken in June 2006 revealed that Plaintiff's CD4 count had increased to 80, although the test also revealed the presence of a high level of HIV-1 RNA (Tr. 233, 236, 344). According to progress notes from Ms. Caffey, Plaintiff was not consistently compliant with his medication (Tr. 326, 336). A blood test performed October 12, 2006, revealed the Plaintiff's his CD4 count had dropped to 40 (Tr. 318). Plaintiff temporarily missed work twice in 2006 on account of illness. The first absence, in August, was due to vertigo, but Dr. Ramanathan cleared him to return to work on August 23, without any restrictions (Tr. 328). The second absence, because of back pain, occurred in October, but Ms. Caffey cleared Plaintiff to return to work on October 13, again without any restrictions (Tr. 319).

According to a disability report Plaintiff completed in November, 2006, Plaintiff stopped working per doctor's order on the tenth of that month (Tr. 105). On November 15, Plaintiff told Ms. Caffey that he was finding it increasingly difficult to work and to do activities of daily living (Tr. 312). He insisted that he took his medication daily but admitted that he would forget to take the proper dosage at the proper time (Tr. 312). A December 2, 2006, progress note from Ms. Caffey indicated Plaintiff took Vicoden, on account of complaints of myalgia (Tr. 298). A progress note dated December 13 indicated Plaintiff had "stress related" pain (Tr. 298). Plaintiff remained active despite his disease and claims of pain. He reported on a patient information form dated December 4, 2006, that he walked for 30 minutes at least three times weekly (Tr. 300).

Dr. R. Patel conducted a consultative examination of Plaintiff on March 1, 2007 (Tr. 386-93). According to Dr. Patel, Plaintiff denied any history of pneumonia, shortness of breath, cough, dysentery, diarrhea, or weight loss (Tr. 386). The examination found no significant skin rash, dermatitis, or ulcers (Tr. 387). Dr. Patel noted that Plaintiff had generalized body aches "at times" but was negative for chest pain (Tr. 386, 387). Plaintiff had a normal gait and all his reflexes were normal (Tr. 388, 391). Dr. Patel determined that Plaintiff's "functional capacity of walking is practically unlimited," and that Plaintiff had 5/5 motor strength in all extremities (Tr. 387-88). While Dr. Patel confirmed the HIV/AIDS diagnosis, he determined that the disease was "very well controlled on medication" and that there was no sign of any opportunistic infection; he concluded that Plaintiff's prognosis was "excellent with current antiretroviral medication" (Tr. 388). Dr. Patel found that Plaintiff had no physical or mental limitations (Tr. 392).

Two weeks later, on March 15, Dr. B.D. Choi conducted a physical RFC assessment (Tr. 394-401). Dr. Choi acknowledged Plaintiff's low CD4 count (Tr. 396). Nonetheless, Dr. Choi determined that Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, could stand/walk and sit for six hours in an eight-hour workday, and had no push/pull limitations (Tr. 395). Dr. Choi limited Plaintiff to occasional climbing and balancing and indicated Plaintiff should avoid even moderate exposure to hazards such as machinery and heights, but imposed no other postural or environmental limitations (Tr. 396, 398). Dr. Choi noted that Plaintiff imposed two limitations on himself: 1) Plaintiff believed he could not drive because AIDS-related complications prevented him from gripping the steering wheel; and 2) Plaintiff believed he could not lift over five pounds (Tr. 399). Dr. Choi determined that the medical evidence did not support either of these self-imposed limitations and opined that Plaintiff could take care of his daily needs on his own (Tr. 399).

Plaintiff remained under the care of Dr. Ramanathan's office in 2007 and 2008, but scheduled significantly fewer office visits. His first visit in 2007 was on March 6, prior to which he was last seen on December 13, 2006 (Tr. 142). Test results from May 11, 2007, indicated Plaintiff's CD4 count had risen to 97 (Tr. 144). According to a progress note dated May 18, 2007, Plaintiff complained of left shoulder pain and could not raise his arms above his head, and had been prescribed medication for pneumonia (Tr. 140).

In a letter to Plaintiff's attorney dated June 23, 2008, Dr. Ramanathan and Ms. Caffey summarized Plaintiff's treatment and progress for the first half of 2008 (Tr. 139). They reported that Plaintiff continued on highly active antiretroviral medication, that his CD4 count had climbed to 154, and his viral load was 80 (Tr. 139). Plaintiff had been placed on Acyclovir to treat herpes (Tr. 139). Plaintiff had a history of dyslipidemia, which was being treated with

medication and was improving (Tr. 139). Plaintiff was also diagnosed with degenerative joint disease but treatment outcomes were "deferred to orthopedic evaluation" (Tr. 139). Dr. Ramanathan and Ms. Caffrey reported in this letter that Plaintiff "is a candidate for permanent disability based on the findings in his medical record and the current status of his health condition." *Id.*

### 3. Vocational Expert

Pauline Pegram, a vocational expert (VE), also testified at the hearing (Tr. 44-50). According to Ms. Pegram, the Dictionary of Occupational Titles classified dishwasher as "medium" unskilled work, but Plaintiff's description of his duties indicated he had performed the job at the "light" exertional level (Tr. 47-49). Ms. Pegram testified that Plaintiff could continue to perform this work, as well as prior work as a teacher's aide, if he could stand six to eight hours each day and lift up to 20 pounds; but she also agreed that Plaintiff had lifted much less than 20 pounds in those positions (Tr. 49-50).

### C. *Plaintiff's Claims of Error*

Plaintiff's argues that the ALJ's RFC finding failed to account for all of his limitations. Plaintiff offers two reasons why he believes the ALJ improperly assessed his RFC. First, he argues that the ALJ failed to properly credit his testimony. *See* Plaintiff's Brief at 11-16. Second, Plaintiff avers that his claims of limitations are supported by the medical evidence and that the ALJ improperly rejected the opinion of Plaintiff's treating physician. *See* Plaintiff's Brief at 13-14.

Defendant responds that the ALJ properly accounted for all of Plaintiff's limitations and that a wealth of evidence supports the ALJ's RFC finding. Defendant further responds that the

ALJ properly discounted opinion of Plaintiff's treating physician, as that opinion was entirely conclusory and not supported by the objective medical evidence.

## III. DISCUSSION

### *A. Standard of Review*

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v.*

*Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing

the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the

analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

As noted earlier, Plaintiff's primary argument on appeal is that the ALJ's RFC finding failed to account for all of his limitations. Residual Functional Capacity circumscribes "the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir. 2002). "A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other." *Yang v. Comm'r of Soc. Sec.*, 2004 WL 1765480, *5 (E.D. Mich. 2004). "The regulations recognize that individuals who have the same severe impairment may have different [residual functional capacities] depending on their other impairments, pain, and other symptoms." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed.Appx. 425, 429 (6th Cir.2007); 20 C.F.R. § 404.1545(e). Not all impairments deemed "severe" in step two must be included in the hypothetical. *Griffeth*, 217 Fed.Appx. at 429. "The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F.Supp.2d 489, 497 (E.D. Mich. 2005).

The ALJ is only required to incorporate the limitations that he finds credible – this obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476. When weighing credibility, an ALJ may give less weight to the testimony of interested witnesses. *See Cummins v. Schweiker*, 670 F.2d 81, 84 (7th Cir.1982) ("a trier of fact is not required to ignore incentives in resolving issues of credibility."); *Krupa v. Comm'r of Soc. Sec.*, 1999 WL 98645, *3 (6th Cir.1999). An ALJ's findings based on the credibility of an applicant are to be accorded great weight and deference, particularly since the ALJ is charged with the duty of observing a witness's demeanor and credibility. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.1997).

The ALJ ultimately determined that Plaintiff possessed the residual functional capacity to perform a range of light work. "Light work" is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

The record reflects that no treating physician opined that Plaintiff was functionally restricted beyond the limitations as found by the ALJ. As the ALJ noted, Dr. Patel's consultative examination indicated that medication had done a good job controlling Plaintiff's AIDS (Tr. 22, 386-93). The ALJ also correctly noted that Dr. Patel did not find any specific etiology to explain

Plaintiff's complaint of body aches (Tr. 22, 388). Furthermore, Dr. Patel observed no sign of opportunistic infection, skin rash, dermatitis, or ulcers (Tr. 386-88). Dr. Patel indicated that Plaintiff had "practically unlimited" functional capacity for walking and had full motor strength in all extremities (Tr. 388). In fact, Dr. Patel was very optimistic about Plaintiff's prospects; he believed Plaintiff's overall prognosis was "excellent" so long as he continued taking his anti-retroviral medication (Tr. 388).

Dr. Choi, who reviewed Plaintiff's medical records to conduct the RFC assessment in March 2007, made similar findings. Dr. Choi determined that despite his CD4 count of 80, Plaintiff could lift 20 pounds occasionally and 10 pounds frequently, and could stand/walk and sit for six hours in an eight-hour day (Tr. 395-96). He further determined that Plaintiff could take care of his daily needs without assistance (Tr. 399).

Plaintiff's treatment records also support the RFC finding. Summarizing Plaintiff's treatment for the first half of 2008, Dr. Ramanathan, Plaintiff's treating physician, noted that Plaintiff's CD4 count had risen to 154 and his viral load was 80 (Tr. 139). While the CD4 count was below normal, it also suggested Plaintiff responded well to treatment; his CD count dipped as low as 45 in March 2005, before Plaintiff began highly active anti-retroviral therapy (Tr. 375). The viral load similarly suggested Plaintiff's treatment was effective.

Other impairments of Plaintiff's were also responsive to treatment or did not limit his ability to work. Dr. Ramanathan noted that Plaintiff's dyslipidemia was improving with medication (Tr. 139). There are no records indicating that this condition limited Plaintiff in any significant manner. So too for Plaintiff's herpes and degenerative joint disease. Plaintiff took Acyclovir for herpes, and Dr. Ramanathan deferred treatment of the degenerative joint disease in Plaintiff's shoulder for an orthopedic evaluation (Tr. 139). While Dr. Ramanathan made no

assessment of the Acyclovir's efficacy, the record contains no document even suggesting the herpes virus limited Plaintiff's ability to work. And as the ALJ noted, the record contains no indication that Plaintiff ever received treatment from an orthopedist or any other doctor for the degenerative joint disease (Tr. 22). There is, similarly, no evidence in the record indicating this condition materially affected Plaintiff's RFC, and neither the RFC assessment nor the consultative examination noted any limitations associated with the condition. These records, together with Dr. Patel's and Dr. Choi's reports, soundly refute Plaintiff's assertion that "[t]here are no medical records indicating that the Plaintiff could be employed." Plaintiff's Brief at 9.

Moreover, Plaintiff's own account of his daily activities supports the ALJ's RFC finding. As the ALJ noted, Plaintiff reported in late 2006 that he cleaned his house for two-and-a-half hours each day, which included sweeping, vacuuming, mopping, making the bed, and washing dishes (Tr. 19, 122-24). Plaintiff further disclosed that he prepared all three of his meals daily and shopped for groceries every other week (Tr. 41-42, 124-25). Plaintiff attended church twice weekly (Tr. 42, 126). Additionally, as the ALJ noted, despite Plaintiff's complaints and conditions, Plaintiff managed to take walks approximately three times weekly (Tr. 19, 126, 300). The ALJ properly considered these activities in arriving at Plaintiff's RFC. *See* 20 C.F.R. § 404.1529(c)(3)(I). *See also Oliver v. Sec'y Health & Human Serv's*, 804 F.2d 964, 966 (6th Cir. 1986) (the claimant's activities, including driving car for short distances and walking four or five blocks daily, supported finding that he his capable of performing light work).

Plaintiff also argues that the ALJ's RFC finding is erroneous because the ALJ failed to give sufficient weight to Plaintiff's treating physician's opinions. *See* Plaintiff's Brief at 17-18. Plaintiff claims the ALJ "totally rejected" Dr. Ramanathan's opinion on nothing more than "mere speculation and poor intuition." *Id.* at 17. While Plaintiff does not specifically mention which

opinion the ALJ rejected, presumably it is Dr. Ramanathan's conclusion that Plaintiff "is a candidate for permanent disability," found in the penultimate paragraph of his letter of June 23, 2008 (Tr. 139).

Although the ALJ did not accept that opinion, he accepted many others from Dr. Ramanathan. Dr. Ramanathan's letter figured prominently in the ALJ's analysis of Plaintiff's impairments and RFC. As explained above, the ALJ accepted Dr. Ramanthan's conclusions that Plaintiff's dyslipidemia improved as result of treatment. Dr. Ramanthan's notation of Plaintiff's CD4 count and viral load, together with information in the treatment progress reports, supports the ALJ's finding that Plaintiff's AIDS responded well to treatment. The ALJ also took at face value Dr. Ramanathan's lack of mention of any limitations resulting from Plaintiff's herpes and degenerative joint disease.

The ALJ did reject the doctor's ultimate conclusion that Plaintiff "is a candidate for permanent disability," but Plaintiff wrongly asserts that this rejection is predicated entirely on speculation. Indeed, the ALJ supplied good reasons for his rejection. The ALJ noted that the opinion was conclusory, because Dr. Ramanathan provided little explanation of the evidence he relied on in forming it (Tr. 22). The ALJ also made clear that this opinion was inconsistent with the record evidence, particularly Plaintiff's daily activities (Tr. 22-23). This, and other evidence discussed above, supports the ALJ's determination that Dr. Ramanathan's opinion "departs substantially from the rest of the evidence of record" (Tr. 23). These opinions did not merit controlling weight because a treating physician's opinion is given controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and if it is not inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2).

-16-

Additionally, the ALJ correctly noted that the issue of disability is reserved for the Commissioner – another good reason the doctor's opinion was not entitled to controlling weight or any special significance (Tr. 23). *See* 20 C.F.R. § 404.1527(e); Social Security Ruling 96-5p, *Policy Interpretation Ruling Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner*, 1996 WL 374183 at *5. As such, Dr. Ramanathan's opinion was not entitled to controlling weight, and the ALJ properly evaluated it as any other medical opinion under the criteria set forth at 20 C.F.R. § 404.1527(d). Under this criteria, and given that Dr. Ramanathan's opinion is rebutted by the record as a whole, the ALJ properly discounted it.

The ALJ's RFC finding is well-supported by substantial evidence, and the vocational expert's testimony is uncontradicted and unchallenged. Accordingly, the ALJ properly found that Plaintiff could perform his past work as a dishwasher and was not disabled. In sum, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decision makers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.    RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140

(1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

S/Mark A. Randon  
MARK A. RANDON  
UNITED STATES MAGISTRATE JUDGE

Dated: July 20, 2010

*CERTIFICATE OF SERVICE*

*I hereby certify that a copy of the foregoing document was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 20, 2010.*

*S/Melody R. Miles*  
*Case Manager to Magistrate Judge Mark A. Randon*  
*(313) 234-5542*